UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT JOHNSON, individually, and on behalf of all others similarly situated,

Plaintiff,

v. Case No. 21-C-836

SCHNEIDER NATIONAL, INC.,

Defendant.

---

**DECISION AND ORDER**

---

Plaintiff Robert Johnson, individually and on behalf of all others similarly situated, brought this putative collective action against Defendant Schneider National, Inc. pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*. Plaintiff alleges that Schneider failed or refused to pay him and putative class members the requisite minimum wage and overtime wages. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Before the Court is Schneider's motion to compel individual arbitration of Plaintiff's claims and to stay proceedings pending a ruling on the motion and completion of arbitration. For the following reasons, the motion will be partially granted.

**BACKGROUND**

On or about April 18, 2021, Plaintiff was hired as a company driver for Schneider. Compl. ¶ 6, Dkt. No. 1; Sheedlo Decl. ¶ 6, Dkt. No. 13. Plaintiff alleges that, during Schneider's orientation and training process for new drivers, Plaintiff would regularly work from 6:30 a.m. to 8:00 p.m. but only receive a flat rate of $80.00 per day. Compl. ¶¶ 11–18. Based on Plaintiff's

average workday, which consisted of at least 13.5 hours, he contends that he was compensated at a rate of no more than $5.93 per hour. *Id.* at ¶ 46. Plaintiff alleges that Schneider failed to properly compensate him for overtime performed.

The primary issue in this motion, however, is whether Plaintiff should be compelled to individually arbitrate his claims. When Schneider onboards a new employee, it requires the new hire to view and agree to a set of "Associate Acknowledgements." Prestine-Dommer Decl. ¶ 4, Dkt. No. 12. At the start of this process, the new employee is given the following instructions:

> Please read through the statements below and select "I Agree" or "I Do Not Agree" for each question. If you do not agree or do not understand the statement, please reach out to your leader or Human Resource Business Partner for further assistance.
>
> By answering the questions below, and completing this form, you acknowledge that the selections you make are true and accurate representations of your intent and that you agree to be bound by such expressions of intent. The answering of each of these questions by you shall constitute your electronic signature which shall be enforceable as if you had signed this document through the use of a handwritten signature.

*Id.* at ¶ 6. The employee must click "Continue" to review each set of Associate Acknowledgements. *Id.* One of the Associate Acknowledgements concerned the existence and applicability of Schneider's Mediation & Arbitration Policy (SMAP). *Id.* at ¶ 9. Schneider asserts, and Plaintiff does not dispute, that Plaintiff accepted the SMAP's terms and did not exercise his right to opt out of the SMAP or its state law provision by selecting "I Agree" when reviewing the Associate Acknowledgement regarding the SMAP.

The SMAP applies to "any individual who has applied for employment with Company, who is actually or allegedly employed by Company, or whose actual or alleged employment with Company terminates after being bound by this SMAP, and who wishes to initiate or participate in formal dispute resolution proceedings to resolve any Covered Disputes." *Id.* at 10. "Covered Disputes" are defined as "any and all employment-related claims, causes of action, or other

disputes . . . between a Covered Individual and Company." *Id.* Covered disputes also include "a Covered Individual's actual or alleged employment with or work for Company . . . and/or any of the terms, conditions, or benefits of such employment or work." *Id.* In addition, the SMAP contains a representative action waiver and defines "Representative Action" as "any action or proceeding brought or sought to be brought by any person or entity . . . in a representative capacity on behalf of or for the benefit of . . . a Covered Individual, Company, and/or any governmental entity." *Id.* at 12. This includes any class action or arbitration and any collective action or arbitration pursuant to the FLSA. *Id.*

The SMAP states that the SMAP is "expressly subject to and governed by the Federal Arbitration Act" but that "Covered Individuals and Company waive the application or enforcement of any provision of the FAA [Federal Arbitration Act] which would otherwise exclude this SMAP from its coverage." *Id.* at 16. It provides, "[t]o the extent that state law is applicable under the FAA and/or the Convention and/or in the event a court of competent jurisdiction holds or decides that this SMAP and/or its Waiver Provisions are not subject to and governed by the FAA, then the laws of the State of Nevada, under which Schneider National, Inc. is organized and exists, will be the applicable state law, without regard to or application of any conflict of law principles." *Id.*

The SMAP also allows an employee to elect not to be bound by the SMAP or its chosen state law. In particular, the SMAP states, "[n]ot later than the 30th calendar day after the date the Covered Individual has received notice or a copy of this SMAP (the 'Election Deadline'), the Covered Individual can elect not to be bound by this SMAP or its Chosen State Law provision by giving Company written notice of such election (an 'Election Notice'). Company has no preference as to whether the Covered Individual makes either or both such elections, and a Covered Individual should feel free to do so without fear of retaliation or reprisal by Company, which is

strictly prohibited." *Id.* To opt out, the employee need only provide basic information about themselves, state that they are electing not to be bound by the SMAP or its state law provision, sign and date the statement, and hand deliver, fax, email, or mail the written request to Schneider's general counsel. *Id.*

**ANALYSIS**

Schneider seeks to compel individual arbitration of Plaintiff's claim, asserting that the SMAP should be enforced precisely as written. Dkt. No. 11 at 8. Plaintiff asserts that the Federal Arbitration Act (FAA) does not apply, that the Court lacks authority to compel arbitration under Nevada law, and that, even if the Court does have the authority to do so, the SMAP is unconscionable under Nevada law, such that this lawsuit should be allowed to proceed. The Court will address each argument in turn.

**A. The Federal Arbitration Act**

"Enacted in 1925, the FAA was Congress's response to the general 'hostility of American courts to the enforcement of arbitration agreements.'" *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 799 (7th Cir. 2020) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001)). The Act sought to replace "'widespread judicial hostility' with a 'liberal federal policy favoring arbitration.'" *Id.* at 799–800 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). As such, the FAA sweeps broadly, requiring courts to rigorously enforce arbitration agreements according to their terms. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). But certain occupations are exempted from the FAA. Section 1 of the Act provides that "nothing" in the Act "shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The Supreme Court has

interpreted § 1 of the Act to exempt "contracts of employment of transportation workers" from the FAA. *Circuit City*, 532 U.S. at 119.

The contract at issue here is one involving employment, but the parties dispute whether Plaintiff is an exempt "transportation worker" within the meaning of the FAA. The Seventh Circuit has delineated the boundaries for those employees that may be considered transportation workers, such that they are exempt from the FAA's coverage. *Saxon v. Sw. Airlines Co.*, 993 F.3d 492 (7th Cir. 2021). In *Saxon*, the Seventh Circuit noted that the focus is not on whether the plaintiff is engaged in commerce but instead on "whether a given class of workers is engaged in commerce and whether [the plaintiff] is a member of that class." *Id.* at 495–96. And whether a class of workers is engaged in commerce hinges upon whether that class performs work "analogous to that of seamen and railroad employees, whose occupations are centered on the transport of goods in interstate and foreign commerce." *Id.* at 496 (internal quotations and citations omitted).

Schneider argues that Plaintiff is not a transportation worker within the meaning of the FAA. It asserts that Plaintiff cannot be considered a transportation worker by the mere virtue of being employed by a transportation company and that his unsworn statement that he was a "driver" is insufficient to establish his active engagement in the interstate movement of goods. Dkt. No. 19 at 3. Schneider has asserted in a sworn declaration, however, that it hired Plaintiff as a "company driver" and that he maintained employment with Schneider until July 7, 2021. Sheedlo Decl. ¶ 6. In addition, Schneider's company drivers are engaged in the transport of interstate and foreign commerce. *See, e.g.*, *Expert cross-border shipping between the U.S., Mexico, and Canada*, SCHNEIDER, *available at* https://schneider.com/freight-shipping-solutions/international-trucking (last accessed Mar. 18, 2022). A number of courts that have considered this issue have concluded that interstate truck drivers are transportation workers and thus exempt from the FAA. *See, e.g.*,

*New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 544 (2019) (interstate truck driver, working as an independent contractor, fell within the transportation worker exemption); *Romero v. Watkins & Shepard Trucking, Inc.*, 9 F.4th 1097, 1100 (9th Cir. 2021) (recognizing that the Ninth Circuit has held that delivery drivers, even those who do not cross state lines, fall within the FAA's transportation worker exemption). The Court concludes that Plaintiff, as a company driver, belongs to a class of workers engaged in interstate and foreign commerce and is exempt from the FAA under 9 U.S.C. § 1. *See Saxon*, 993 F.3d at 495–96.

Schneider asserts that, even if Plaintiff is an exempt transportation worker, Plaintiff waived the "application or enforcement of any provision of the FAA which would otherwise exclude [the] SMAP from its coverage." *See* Pristine-Dommer Decl. at 16. Citing *New Prime* and *Romero*, Plaintiff argues that the parties cannot contract around § 1 because the legislature has "expressly withheld" the power to compel arbitration from the Court in this situation. Dkt. No. 18 at 5.

Although the Supreme Court in *New Prime* did not address the exact question of law at issue here, it provides insightful guidance on whether § 1 may be waived by the parties to an arbitration agreement. There, the issue before the Supreme Court was whether an arbitrator or court must determine whether § 1's exemption applies in any given case. The Court noted that, although a "court's authority under the Arbitration Act to compel arbitration may be considerable, it isn't unconditional." *New Prime*, 139 S. Ct. at 537. It stated that "§ 1 warns that 'nothing' in the Act 'shall apply' to 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" *Id.* (quoting 9 U.S.C. § 1). The Court held that a court, not an arbitrator, must decide for itself whether § 1's exclusion applies. It reasoned:

> After all, to invoke its statutory powers under §§ 3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first know whether

> the contract itself falls within or beyond the boundaries of §§ 1 and 2. The parties' private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the Act authorizes a court to stay litigation and send the parties to an arbitral forum.

*Id.* at 537–38. In other words, § 1 limits the *authority* of a court to compel arbitration and stay litigation where the employment contract at issue belongs to an exempt transportation worker. Where a contract falls within the boundaries of § 1, "nothing herein contained," meaning nothing in the FAA, "shall apply to the contracts" of transportation workers. 9 U.S.C. § 1. Naturally, this restricts the Court's ability to exercise its statutory powers under §§ 3 and 4 of the FAA. Waiver of § 1 by the parties, then, would remove the limit of authority placed upon this Court by Congress, and such a waiver cannot stand.

The Court's reading of § 1 is confirmed by the Ninth Circuit's decision in *Romero*. In that case, the court examined the same SMAP at issue in this case[1] and considered whether the parties could waive § 1 of the FAA. *Romero*, 9 F.4th at 1100–01. After examining the Court's decision in *New Prime*, it concluded that a private agreement cannot alter a court's authority to invoke its statutory powers where § 1 of the FAA exempts a transportation worker. *Id.* at 1101. The court also noted that, although the FAA does not expressly state that § 1 is nonwaivable, the statute "need not repeat what its language already makes clear: 'nothing herein,' including the grant of power to courts to compel arbitration, 'shall apply to contracts of employment of . . . workers engaged in foreign or interstate commerce.'" *Id.* (quoting 9 U.S.C. § 1). It held that, "[u]nder § 1's plain text, the FAA's transportation worker exemption cannot be waived by the terms of a private contract." *Id.* The Court finds this reasoning persuasive and concludes that the parties' waiver of § 1 in the SMAP cannot stand. Thus, the FAA does not apply in this case.

[1] The defendant in that case, Watkins and Shepard Trucking, Inc., is a subsidiary of Schneider. *See Romero*, 9 F.4th at 1098.

### B. The SMAP and Nevada Law

The Court next looks to Nevada law to determine whether the SMAP's arbitration clause may be enforced. Although Plaintiff asserts that there is no connection between Schneider and Plaintiff to the State of Nevada, Dkt. No. 18 at 7,[2] he appears to concede that Nevada law governs the SMAP in this dispute. Plaintiff argues that Nevada law does not grant this Court authority to compel arbitration. He cites N.R.S. § 38.244(1) of the Nevada Uniform Arbitration Act (NUAA), which states that "[a] court of this state having jurisdiction over the controversy and the parties may enforce an agreement to arbitrate," and N.R.S. § 38.217(2)(a), which provides that parties to an arbitration agreement may not "[w]aive or agree to vary the effect of the requirements of . . . NRS 38.244." In Plaintiff's view, these statutes "do not purport to extend [the NUAA] beyond the tribunals of Nevada." Dkt. No. 18 at 8. But the statutes do not create "unmodifiable jurisdiction limits" as Plaintiff suggests. *Id.* Even though the statute only references Nevada tribunals, the Nevada legislature can only enact statutes that govern its tribunals. That does not prevent courts of other jurisdictions from applying Nevada's state law to cases where that law controls, however. Plaintiff's position, that only Nevada courts have the power to compel arbitration under the NUAA, would lead to absurd results. Exclusive jurisdiction would create an end-run around an otherwise valid arbitration agreement under state law by allowing a plaintiff to simply avoid the contracted-for arbitration by suing in a state court other than the one identified in the arbitration agreement. For these reasons, the Court concludes that it has authority to compel arbitration under the NUAA.

---

[2] Schneider notes that Plaintiff's actual employer was Schneider National Carriers, Inc., an entity incorporated and organized under the laws of the State of Nevada. Sheedlo Decl. ¶¶ 4–5.

Plaintiff also argues that the SMAP is unenforceable because it does not contain the "specific authorization" required by Nevada law. Under N.R.S. § 597.995(1), an agreement that includes a provision that requires a person to submit to arbitration "must include specific authorization for the provision which indicates that the person has affirmatively agreed to the provision." If such an authorization is missing, the arbitration "provision is void and unenforceable." N.R.S. § 597.995(2). Plaintiff maintains that the SMAP does not include a specific authorization. He contends that the SMAP is embedded in a prompt that contains three separate topics, that the word "arbitration" appears just once, and that the prompt was a "nesting doll" that required Plaintiff to continuously go deeper to discover the SMAP's terms. Dkt. No. 18 at 10–11. Schneider counters that the SMAP is a stand-alone document, that it was hyperlinked in blue and underlined text to direct Plaintiff's attention to it, that the prompt summarized the key terms of the SMAP, and that Plaintiff selected "I Agree" after seeing all of this information. Dkt. No. 19 at 9–10; *see also* Prestine-Dommer Decl. ¶ 9.

Nevada's "specific authorization" requirement is satisfied in this case. A review of the screen shown to Plaintiff demonstrates that the SMAP was prominently featured in the prompt, and the prompt thoroughly described the SMAP. *See* Prestine-Dommer Decl. ¶ 9. Plaintiff "affirmatively agreed to the provision," N.R.S. § 597.995(1), by selecting the "I Agree" button that was located immediately below the SMAP's pertinent terms and information. This issue was recently addressed in *Romero v. Watkins & Shepard Trucking, Inc.*, and the court found that the defendant met the specific authorization requirement under Nevada law because "Plaintiff affirmatively agreed to the SMAP, and thus to arbitrate, when he checked the 'I Agree' box at the end of the agreement." *Romero v. Watkins & Shepard Trucking, Inc.*, No. EDCV 19-2158 PSG (KKx), 2020 WL 5775180, at *8 (C.D. Cal. July 10, 2020), *aff'd* 2021 WL 3675074 (9th Cir. Aug.

19, 2021). The Court also concludes that the SMAP contains the specific authorization required by N.R.S. § 597.995.

Plaintiff argues that the SMAP is unconscionable under Nevada law. "Nevada law requires both procedural and substantive unconscionability to invalidate a contract as unconscionable." *U.S. Home Corp. v. Michael Ballesteros Trust*, 134 Nev. 180, 190, 415 P.3d 32 (2018). A clause is procedurally unconscionable "when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 554, 96 P.3d 1159 (2004). Procedural unconscionability "often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." *Id.* Substantive unconscionability, on the other hand, focuses on one-sided or "oppressive" terms. *Gonski v. Second Judicial Dist. Court of State ex rel. Washoe*, 126 Nev. 551, 558, 245 P.3d 1164 (2010).

Plaintiff asserts that the SMAP is procedurally unconscionable because it is not presented conspicuously. But the prompt discussed the relevant terms of the SMAP, indicated that acceptance would mean all disputes would be solved by individual and final binding arbitration, and notified Plaintiff that he could elect to opt out of the SMAP in its entirety or only its choice of law provision. Prestine-Dommer Decl. ¶ 9. The prompt also provided Plaintiff with an opportunity to view the SMAP by following a hyperlink that was prominently embedded in the prompt. By selecting "I Agree," Plaintiff agreed to all of these terms and represented that he had been able to "read and review a copy" of the SMAP. *Id.* In short, the SMAP was more than adequately presented to Plaintiff.

Plaintiff also criticizes the procedure for opting out of the SMAP as "onerous." Dkt. No. 18 at 13. To opt out, however, an individual need only compose a letter that includes the individual's basic information, a statement that the individual is electing not to be bound by the SMAP, and the individual's signature and date of signing and deliver it to Schneider's general counsel, which can be done by email (the email address is provided in the SMAP), fax, regular mail, or hand delivery. Prestine-Dommer Decl. at 16. Alternatively, Plaintiff could have selected "I Do Not Agree," and contacted his leader or Human Resource Business Partner for clarification or further assistance as was indicated in the opening prompt. *Id.* at ¶ 6. The opt out process was not onerous and does not contribute to any procedural unconscionability.

Plaintiff further contends that the SMAP is "difficult to digest" and that a layperson would not understand the consequences of its terms. Dkt. No. 18 at 14–15. The SMAP begins by advising in bold and capitalized print:

> **PLEASE READ THIS POLICY CAREFULLY. IT PROVIDES THAT, UNLESS YOU PROPERLY ELECT TO NOT BE BOUND BY THIS POLICY AND EXCEPT AS OTHERWISE SET FORTH BELOW, ANY COVERED DISPUTES CAN ONLY BE RESOLVED BY VOLUNTARY MEDIATION, MANDATORY FINAL AND BINDING INDIVIDUAL ARBITRATION, OR IN A SMALL CLAIMS COURT PROCEEDING, WHICH REPLACE THE RIGHT TO OTHERWISE GO TO COURT OR AN ADMINISTRATIVE AGENCY, INCLUDING THE RIGHT TO A JUDGE OR JURY TRIAL, TO AN ADMINISTRATIVE HEARING, AND TO BRING OR PARTICIPATE IN ANY OTHER TYPE OF REPRESENTATIVE ACTION OR PAGA ACTION (AS DEFINED BELOW).**

Prestine-Dommer Decl. at 10. The SMAP provides for mandatory final and binding arbitration and that, by agreeing to the SMAP, employees are waiving their right to a trial by judge or jury, as well as their right to bring a representative action. The SMAP's terms are clearly defined and are not so complicated so as to prevent a reasonable person from understanding the consequences of the language used. The Court concludes that the SMAP is not procedurally unconscionable under Nevada law. *See also Romero*, 2020 WL 5775180, at *5–6 (rejecting argument that SMAP

is procedurally unconscionable). Because the Court has concluded that the SMAP is not procedurally unconscionable, it need not address whether it is substantively unconscionable. *See U.S. Home Corp.*, 134 Nev. at 190.

The arbitration agreement is enforceable under Nevada law. Therefore, Schneider's motion to compel arbitration is granted. The Court dismisses Plaintiff's putative collective action claims, as the SMAP provides that Plaintiff has waived his right to bring such an action. Plaintiff must pursue his claims only through the SMAP's specified procedures for mandatory final and binding individual arbitration.

Schneider has requested that the Court stay proceedings in accordance with N.R.S. § 38.221(7), which provides that "[i]f the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration." Notwithstanding the language of N.R.S. § 38.221(7), there is no need to continue the action. Once arbitration is complete, the parties are free to commence a new action to either enforce or vacate the arbitration award. It makes little sense for this case to remain pending when there is no further action for this Court to take.

## CONCLUSION

For the foregoing reasons, Schneider's motion to compel individual arbitration of Plaintiff's claims and to stay proceedings pending a ruling on the motion and completion of arbitration (Dkt. No. 10) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is granted with respect to Schneider's motion to compel arbitration and to stay proceedings pending a ruling on the motion. Schneider's request to stay the action pending the completion of arbitration is denied. Plaintiff's putative collective action claims are dismissed because he assented to be bound by the SMAP, which waived his right to bring a collective action under the FLSA. Plaintiff

must submit his individual claims to arbitration in accordance with the terms of the SMAP. Because all of Plaintiff's claims are subject to arbitration, this case is **DISMISSED** without prejudice. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 21st day of March, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge